UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DONALD K. WHITAKER, individually
and on behalf of all others similarly situated                                          PLAINTIFF

v.                              No. 2:18-CV-02091

SHELTER MUTUAL INSURANCE COMPANY                                                        DEFENDANT

and

SAMUEL BAGGETT, on behalf of himself
and all other similarly situated persons and entities                                   PLAINTIFF

v.                              No. 2:18-CV-02190

SHELTER MUTUAL INSURANCE COMPANY                                                        DEFENDANT

## OPINION AND ORDER

Before the Court are two putative class actions against Defendant Shelter Mutual Insurance Company ("Shelter"). Both cases were removed pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Plaintiff Donald K. Whitaker's action was removed to this Court on May 23, 2018 from the Circuit Court of Logan County, Arkansas. Whitaker seeks certification of the following class:

> Residents of the State of Arkansas who, from January 15, 2011 through the date of resolution of this action, (a) purchased a policy of insurance from the Defendant; (b) made a claim for automobile medical payment or PIP benefits; (c) had their benefits reduced by the defendant's discounting scheme and (d) failed to exhaust the limits of their med pay or PIP benefits.

(No. 2:18-CV-02091, Doc. 4, p. 7, ¶ 23). Plaintiff Samuel Baggett's action was removed to the United States District Court for the Eastern District of Arkansas on September 25, 2018 from the Circuit Court of Pulaski County, Arkansas, and was transferred to this Court on November 7, 2018 because Shelter is Defendant in both *Whitaker* and *Baggett*, the classes are similarly defined, and

there is substantial overlap of claims and relief sought. Baggett seeks certification of the following class:

> All Arkansas residents, including Plaintiff and all similarly situated persons for the period from March 13, 2013 to the present (the "Class period"), who have or had automobile liability insurance with a Med Pay provision issued by Shelter, and who were denied Med Pay coverage because of payments made by another insurance plan.
>
> Excluded from the class are the agents, affiliates and employees of Shelter and the assigned judge and his/her staff, and members of the appellate courts and their staff.

(No. 2:18-CV-02190, Doc. 5, p. 4, ¶ 2). Despite these different class definitions, Shelter's notices of removal in each case rely on amounts in controversy identified based on the same internal analysis of claims. Both cases will be remanded because Shelter has not demonstrated that this Court can exercise subject matter jurisdiction under CAFA.

In Baggett's case, Baggett filed a motion (No. 2:18-CV-02190, Doc. 15) to remand and a brief (No. 2:18-CV-02190, Doc. 16) in support, and Shelter has filed a response (No. 2:18-CV-02190, Doc. 26) and brief (No. 2:18-CV-02190, Doc. 27) in opposition. Baggett filed a reply (No. 2:18-CV-02190, Doc. 30) with leave of Court. That motion will be granted and Baggett's case will be remanded.

In Whitaker's case, no motion[1] to remand has been filed, but after the issue of subject matter jurisdiction was raised in Baggett's case, the Court entered an order (No. 2:18-CV-02091, Doc. 21) in Whitaker's case on January 24, 2019 directing Shelter to show that this Court has subject matter jurisdiction over the removed action. Shelter has filed its response (No. 2:18-CV-

---

[1] Whitaker's case has pending motions. Whitaker filed a motion (No. 2:18-CV-02091, Doc. 15) to certify a class action and brief (No. 2:18-CV-02091, Doc. 16) in support, and Shelter has filed a response (No. 2:18-CV-02091, Doc. 17) in opposition. The parties have also filed a joint motion (No. 2:18-CV-02091, Doc. 18) to certify a question to the Arkansas Supreme Court and a brief (No. 2:18-CV-02091, Doc. 20) in support. Because the Court is remanding, those motions will terminated as moot.

2

02091, Doc. 22) and brief in support (No. 2:18-CV-02091, Doc. 23). Whitaker did not file a reply. Whitaker's case will also be remanded.

**I.      Law**

"The district courts of the United States . . . 'are courts of limited jurisdiction . . . possess[ing] only that power authorized by Constitution and statute.'" *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "[S]ubject matter jurisdiction is primary and an absolute stricture on the court." *In re Prairie Island Dakota Sioux*, 21 F.3d 302, 304–05 (8th Cir. 1994). CAFA vests subject matter jurisdiction in this Court for certain class actions where "the [putative] class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S.--, 135 S.Ct. 547, 552 (2014) (citing 28 U.S.C. § 1332(d)(2)).

When the Court's subject matter jurisdiction over an action removed from a State court by a defendant has been called into question, either because a plaintiff has challenged that defendant's removal allegations or because the Court has sua sponte raised the question, the removing defendant must demonstrate, by preponderance of the evidence, that jurisdiction is proper. *Dart Cherokee Basin Operating Co., LLC*, 135 S.Ct. at 553–54; *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 944–45 (8th Cir. 2012). The removing party's burden is to describe how the amount in controversy exceeds the jurisdictional amount, and remains a pleading requirement, and not a demand for proof. *Hartis*, 694 F.3d at 944–45.

**II.     Jurisdictional Facts**

From January 15, 2011 until the present, Shelter has sold automobile insurance in the State of Arkansas. Putative class members in both *Whitaker* and *Baggett* purchased automobile

3

insurance policies from Shelter. The State of Arkansas requires that automobile insurance policies "provide minimum medical and hospital benefits" to the insured, family members, passengers, and others injured during motor vehicle accidents "without regard to fault, as follows:"

> MEDICAL AND HOSPITAL BENEFITS. All reasonable and necessary expenses for medical, hospital, nursing, dental, surgical, ambulance, funeral expenses, and prosthetic services incurred within twenty-four (24) months after the automobile accident, up to an aggregate of five thousand dollars ($5,000) per person, and may include any nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing. Expenses for hospital room charges may be limited to semiprivate accommodations.

Ark. Code Ann. § 23-89-202(1). To comply with this provision, Shelter's relevant automobile insurance policies include a provision for a medical payment coverage benefit, which reads:

> INSURING AGREEMENT FOR COVERAGE C
>
> Subject to all conditions, exclusions, and limitations of our liability, stated in this policy, [Shelter] will pay the reasonable charges for necessary goods and services for the treatment of bodily injury sustained by an insured, if such bodily injury directly results from an accident caused by the occupancy, use, or maintenance of an auto. The reasonable charges must be incurred within two years of the accident date.

(No. 2:18-CV-02091, Doc. 7, ¶ 13; No. 2:18-CV-02190, Doc. 10, ¶ 9).

Arkansas law prohibits accident insurance contracts from including a provision reducing benefits paid "due solely to the existence of one (1) or more additional contracts providing benefits to that individual" unless an insurance regulation allows for such a reduction. Ark. Code Ann. § 23-85-132. Whitaker's and Baggett's complaints each cite to "Rule 21" from the "Arkansas Insurance Commission."[2] (No. 2:18-CV-02091, Doc. 4, pp. 4–6, ¶ 18; No. 2:18-CV-02190,

---

[2] Arkansas has a "State Insurance Department." Ark. Code Ann. § 23-61-101. This agency refers to itself as the "Arkansas Insurance Department." *See* https://www.insurance.arkansas.gov. The Arkansas Insurance Department is headed by an "Insurance Commissioner," which may have led Whitaker and Baggett to identify this agency as the "Arkansas Insurance Commission."

The website for the Arkansas Insurance Department publishes a "Rule 21" that appears to be similar, but not identical, to the Rule 21 cited in the complaints. The Rule 21 on the website

Doc. 5, pp. 3–4, ¶¶ 18–20). The complaints quote relevant provisions of this Rule 21, which mandates that benefits under a primary plan that has no rules for coordination of benefits "must be determined without taking the existence of any other plan into consideration." (No. 2:18-CV-02091, Doc. 4, p. 5, ¶ 18; No. 2:18-CV-02190, Doc. 5, p. 3, ¶ 19).

Whitaker alleges that Shelter has violated these laws and regulations and the medical coverage payment provision in putative classmembers' policies by negotiating lower bills directly with healthcare providers and retaining the difference, rather than paying the amounts claimed to its insured customers. Whitaker seeks to certify a class of Arkansas residents who, from January 15, 2011 onward, purchased a policy of insurance from Shelter; made a claim for medical expenses under the policy's medical coverage payment provision; for whom Shelter negotiated a lower bill with the medical provider that did not exhaust the insured's $5,000 policy limit; and to whom Shelter did not pay the difference.

Baggett alleges that Shelter reduces the amount of benefits it pays under the medical coverage payment provision to account for amounts paid by other insurance policies owned by the insured. Baggett seeks to certify a class of Arkansas residents who, from March 13, 2013 onward, purchased a policy of insurance from Shelter; made a claim for medical expenses under the policy's medical coverage payment provision; and for whom Shelter reduced the amount it paid under the medical coverage payment provision because of payments made by another insurance plan.

---

and the Rule 21 in the complaints is not the Rule 21 that appears either on the Arkansas Secretary of State's website or in the Arkansas Administrative Code published on Westlaw and represented to be current through December of 2018. *See* Ark. Admin. Code §§ 054.00.21-1–054.00.21-7. The Rule 21 appearing in the Arkansas Administrative Code includes different provisions than those cited by Whitaker and Baggett. It may be an issue for the State courts on remand to determine whether the Rule 21 cited by Whitaker and Baggett is valid under Arkansas's Administrative Procedures Act, Ark. Code Ann. § 25-15-201, *et seq*.

5

To determine whether an adequate amount is in controversy in each case, Shelter reviewed its claims system and obtained a report of every policy during the class period where a claim was made under the medical coverage payment provision and the policy limits were not exhausted, then aggregated that amount, which exceeds $5,000,000. (No. 2:18-CV-02091, Doc. 1-2; No. 2:18-CV-02190, Doc. 26-1 (affidavit of Mark Jones)). Shelter's electronic recordkeeping system is designed in such a way that Shelter is not able to determine the reason why full payment was not made on any of those claims without doing an in-depth claim review. *Id.*; *see also* No. 2:18-CV-02091, Doc. 22-1, pp. 27:18–35:4 (Deposition of Mark Jones).

## III. Analysis

Whether minimal diversity exists is not in question in either of these cases. What is in question is whether Shelter has provided a plausible explanation for its claimed amount in controversy that demonstrates by a preponderance of the evidence that CAFA is satisfied. In each case, the answer is "no," and the matters must be remanded.

Shelter has misidentified the amount in controversy. Shelter's jurisdictional allegations are incorrectly premised on these cases putting into controversy all medical coverage payment provision claims for which the policy limits were not exhausted. Neither Plaintiff has identified his putative class in a way that would plausibly put all those claims into controversy. Rather, the putative classes are defined to include only those claims where policy limits were not exhausted for a particular reason. Shelter's computer reports do not reveal the reason why policy limits were not exhausted in any given case. Shelter did not review the individual claims for which policy limits were not exhausted to determine the reasons why. Shelter did not even review a sample of those claims to conduct a statistical analysis of likely reasons that policy limits were not exhausted. On the record before the Court, it is just as possible that payment on any given claim in Shelter's

report did not exhaust policy limits because the claim was for a small amount as it is because Shelter negotiated a lower bill from the medical provider or reduced the benefit paid because some other insurance policy paid some of the amount claimed. "[T]he amount in controversy is not established by a preponderance of the evidence if a court must resort 'to conjecture, speculation, or star gazing.'" *Waters v. Ferrara Candy Co.*, 873 F.3d 633, 636 (8th Cir. 2017) (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010)).

Because Shelter has failed to establish that a sufficient amount is in controversy for this Court to exercise jurisdiction under CAFA, these matters must be remanded.

## IV.  Conclusion

IT IS THEREFORE ORDERED that, in the matter of *Whitaker v. Shelter Mutual Insurance Co.*, No. 2:18-CV-02091, this case is REMANDED to the Circuit Court of Logan County, Arkansas. All pending motions are TERMINATED.

IT IS FURTHER ORDERED that, in the matter of *Baggett v. Shelter Mutual Insurance Co.*, No. 2:18-CV-02190, Plaintiff's motion (Doc. 15) to remand is GRANTED, and this case is REMANDED to the Circuit Court of Pulaski County, Arkansas.

IT IS SO ORDERED this 15th day of March, 2019.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE